A. Wright, Special J.,
delivered the opinion of the Court.
This is an action of ejectment, instituted in the Circuit Court of Obion county by the defendants in error, as the heirs at law of Joseph Kerr, to recover a tract of land of 1854 acres, situate in that county. Yerdict and judgment were rendered in their favor in that Court, a motion for a new trial was made and overruled, a bill of exceptions filed, and the defendants below have taken an appeal in the nature of a writ of error to this Court, and now ask for a reversal of said judgment.
In order to establish their title, the plaintiffs below read a grant from the State of Tennessee to Joseph Kerr, their ancestor, embracing the land in dispute, bearing "date the 1st day of May, 1828, founded upon an entry dated the 11th of June, 1821, and a survey of date the 15th of November, 1824. The entry and *334 survey were also read. Tbe defendants below read a grant from tbe State of Tennessee to Edward Thursby, for 1900 acres of land, bearing date . tbe 21st day of June, 1825, founded upon an entry of date tbe 25th of May, 1821, and a survey of date tbe 28th day of November, 1824; and without shewing their connection with this grant, or any title in themselves, place their defense upon the ground that they have shewn a title outstanding in said Thursby, superior to that of the plaintiffs. The survey of Thursby was read, but not his entry; and the only evidence we have of. the calls or character of this entry, is the reference to - it in thé survey and grant. The description of the Thursby tract of land, as represented by the surveyor in his certificate of survey, and in the grant, accord precisely, and is very special. They call to begin at a hickory marked I C, on the east boundary of George 'W. L. Marr’s 320 acre survey, 56 poles north from his southeast corner; thence east 779 poles, to an ash, marked I C; thence south 395-J poles, to a large sweet-gum, marked I C; thence west 779 poles, to a stake; thence north 395f poles, to the beginning.
In like manner, the entry of Joseph Kerr is special, and in all respects in compliance with the forms of law. It was surveyed, and the lines marked in precise conformity with its calls, and the grant issued with the same calls. The survey and grant call to begin on two small honey-locusts, marked X V, the southeast corner of George "W. L. Marr’s 320 acre survey; thence west with his line 81 poles, to two sweet-gums, marked X V, the northeast corner of said Marr’s 214 acre survey; thence south 160" poles, to a sweet-gum and walnut, *335 marked X V, tbe southeast corner of said survey; tbence west with said Marr’s south boundary, 293 poles, to a mulberry, marked X V, on the east boundary of said Marr’s 200 acre survey; thence south 28J poles, to a small box elder with black-oak, walnut and sweet-gum pointers, the southeast corner of said 200 acre survey; thence west 340 poles, to an ash and elm, marked X Y, the southwest corner of said survey, on the bank of the Mississippi river; thence south 280§. poles; to a sweet-gum, marked I C, cotton-wood and hackberry; thence east 714 poles, to a stake; thence north 570f poles, to the beginning.
In the calls of the survey and grant of Thursby, there is no conflict with Kerr’s entry, survey or grant. They stand in perfect harmony with each other, and without more, the title of the defendants in error to the land in dispute, would evidently be superior to that of the plaintiffs, because their papers call for an entirely distinct and separate piece of land. But it is contended by the counsel of the plaintiffs in error, that when the surveyor came actually to run the lines of the Thursby entry upon.the ground, he fixed the beginning corner at a hickory, marked I C, in the east boundary of Marr’s 214 acre survey, and that he surveyed and marked the land east and south from that point, instead of east and south from the 320 acre tract, the place designated as the beginning in the entry, thereby making an interference actually on the- ground of 81 by 390J poles. And there is proof in the record, tending to shew that this is so; while on the other hand, there is much proof shewing that the survey was made, and lines run and marked from the true point in the east boundary of the *336 320 acre survey. There is also proof tending to shew that the Thursby entry was crowded south and west, so as to produce the interference by the Wheaton & Tis-dale survey, and a succession of older claimants lying north and east of it, and by Beelfoot lake. On the other hand, there is also much proof that this is not so;' and that even if forced from its original position by these claims, or by the lake, the Thursby entry could have been satisfied by going south, and interfered with no one.
In this state of the case, it becomes necessary to examine the charge of his Honor, the Circuit Judge, to the jury, which was as follows: “ That the grants to Kerr and Thursby covered the land, which was actually surveyed and marked off for them on ground by the surveyor, preparatory to the issuance of the grants. But if the Kerr survey was made before the Thursby survey, and if said grants interfered and lapped upon each other, and the Thursby survey was not made beginning at the point called for as the beginning in the entry, and" the Kerr entry was surveyed at the place and beginning at the point mentioned in the entry, conforming to the entry, and the adjoining entries, then, and in that case, Kerr would have the better title to the interference, although Thursby had the elder entry and elder grant, and that plaintiffs would have a right to recover.
The defendants asked the Court- to charge the jury, “that if in surveying the Thursby entry, the surveyor Was compelled by elder claims, occupant settlements existing at the time, or by the lake, to depart from the calls of the entry; he had a right to run the Thursby *337 tract upon the land in dispute, and that the Thursby grant would hold the land in preference to the younger entry and grant of Kerr.
Also, that “ if in surveying all the older entries of McLemore & Vaulx, McLemore & Lytle, McLemore & Hopkins, J. Currin & Co., Edward Thursby and Edward Harris, they could not all be surveyed at the places called for in the entries without conflicting with older claims or natural objects; then, and in that case, the surveyor had a right to run them, or any one of them, upon the land contained in Kerr’s younger entry, and a grant issued upon such survey would give the grantee the better title to such land,” which the Court refused to do, but charged as above.
We are now to see whether there is available error in the action of the Circuit Judge, in charging as he did, and in refusing to charge as requested. It is maintained and argued here by the counsel of the plaintiffs in error, that there is. It is well settled that an actual survey is evidence of the land granted, although the calls of the grant do not cover any part of the land. Parsons vs. Roundtree, 1 Hayw., 378; Garner & Dickson vs. Norris, 1 Yerg., 62. These cases, and others cited by the counsel of the plaintiffs in error, proceed upon the principle that the survey, as actually made, covers the land intended to be appropriated, and that the grant was, by mistake, so filled up and executed, as not to embrace the land. In Roundtree’s case, he had made an entry of the land, and the survey conformed to the entry, and he took possession and claimed accordingly. But by mistake, either in the surveyor or secretary who filled up the grant, the cor *338 ners were reversed, so that the grant did not cover any of the land surveyed. Parsons afterwards entered the land, and obtained a grant, and sued Roundtree in ejectment, and the Court determined that the mistake of the surveyor, or secretary who filled up the grant, should not prejudice Roundtree, who was well entitled to the land intended to be granted, and which had been surveyed. And if the enterer depart from his entry, and.cause other unappropriated lands not within its sphere to be surveyed and granted, or if the surveyor himself does so, with the sanction of the enterer, the grant will communicate a valid title to the land surveyed.
But it cannot be deduced from these cases, or their principles, that the elder enterer, because of his entry, or the surveyor, because of his official position, can be allowed to depart from the entry to other lands not within its sphere already legally appropriated by a younger enterer. He has a right to the quantity of land called for in his -entry, unless he be restricted by older claims, navigable water-mourses, or the calls of his location; and it is the duty of a subsequent enterer in making his entry .to examine the calls of the prior entry, and take care that he does not encroach upon it. This the law supposes he does. If the entry be what, the law denominates mague, it is void, because it identifies no ¡Dar-ticular piece of land, and furnishes no notice to a subsequent enterer, that the land in question had been previously appropriated; and it is, therefore, not in the way of his entry. But if it be what the law terms a special entry, that is, designates a particular piece of land, which is intended to be appropriated by calls, for objects which are notorious, or become so before the inception *339 of the conflicting claim, then it is held to be notice on its face, to a subsequent enterer, that the land in question had been previously entered. These principles, it seems to me, are inconsistent with the notion that the elder enterer, because ■ he may be deprived of his land by the interference'of better titles, or a navigable watercourse, can be allowed to take other lands not within the scope of his entry, and already appropriated by a subsequent enterer. In such a case, if his lands be lost, his remedy is by a resort to other vacant lands, and not to those of the younger enterer. It may be true, that under the act of 1819, as well as the law prior to that time, considerable latitude in making the survey is secured; and that the elder enterer is not [obliged to point out in his entry, the manner in which his survey shall be made, so as to give notice to subsequent enterers. But still he may do this. He may, in fact, survey the land before he makes his entry, and in the calls of the entry designate the land by metes and bounds and other objects, with as much certainty as any survey could. And if he do this, is he not restricted by the calls of his location? And can he or the surveyor depart from them, to the prejudice of a younger enterer of the adjacent lands ? We think not. White vs. Crocket & Drake, 3 Hayw., 234-236; Caldwell vs. Watson, 6 Humph., 498; Fly vs. E. Tenn. College, 2 Sneed, 689.
We have seen that the Thursby entry was not read, and is not in the record. We cannot, therefore, judge of its legal effect. It may have been so restricted in its calls, as to confine the surveyor to the land east of the Marr 320 acre survey, and to have been in fact a *340 prohibition upon his going elsewhere, or it may have been vague and void. In either event, the Judge’s charge was right. Such an entry could furnish no authority to the surveyor to encroach upon Kerr’s entry. If the contrary is claimed, it was incumbent on the plaintiffs in error to shew the. fact, by producing Thurs-by’s entry in the record. This Court will presume the Circuit Judge to have acted correctly, and will not reverse the judgment if it can suppose a state of facts that would have entitled the party to a verdict similar to the one rendered. The settled rule of this Court, is to affirm every judgment not seen to be erroneous; and it is not competent to set aside a judgment for an abstract proposition delivered by the Judge, however erroneous; and unless the evidence be so stated as to raise the question, it is merely abstract. It will not do to say the judgment is possibly erroneous, or that it does not appear to be right. It must be affirmed, unless it appear wrong. Pickett vs. Pickett, 3 Dev., 6; Thomas vs. Alexander, 2 Dev. & Batt., 385; State vs. Harden, do., 407; McGavock vs. Word, Cooke, 403, 405.
But 2d. The fact that the plaintiffs in error did not read or exhibit Thursby’s entry, is fatal to their case. Without it they could claim no relation of title beyond the date of his grant, which is the 21st of June, 1825; ■and the title of Kerr was the better one, his entry being special, and his grant relating to it. It was necessary to shew the entry, that the Court might see how it existed, when it was in fact made, to what land it applied; whether it was special, and had as a matter of law, any legal validity. Doe Ex. dem. Brooks vs. Ross, *341 2 Dev. & Batt., Law Rep., 484; 5 Hayw., 191. It was tbe duty of tbe Court to declare to' tbe jury tbe legal effect of tbe title papers submitted to them, wbicb it virtually did by stating that Kerr bad tbe better title.
8d. Again: Tbe record does not shew that it contains all tbe evidence submitted to tbe jury; and in such a case, this Court will presume that there was evidence to warrant tbe verdict. 1 Meigs’ Dig., 124.
4th. It is assigned for error, that there is no plea to tbe declaration, except by tbe defendant, Nolen, who, it said, was admitted as a defendant, but not instead of tbe other defendants; and that there is no disposition of tbe case as to them. This objection was untenable, even before tbe passage of tbe act of 1852, cb. 152, § 4. It appears that all tbe parties appeared and investigated tbe cause upon its merits, and in such a case, this Court in Huddleston vs. Garratt, 3 Humph., 629, 631, held that tbe judgment would not be reversed for matters of form, especially in ejectment; tbe fictitious forms in which were introduced to try tbe validity of tbe title to tbe premises in dispute; as where tbe record shewed no flea and issue. And certainly since that act tbe case is cured.
5th. Finally: It is said there is no judgment on tbe verdict, except as to costs. This does not prejudice tbe plaintiffs in error, and they cannot ash a reversal on that account. Besides, it is cured by tbe act of 1852, cb. 152, § 4, and this Court will render tbe proper judgment. 1 Humph., 379; 1 Sneed, 417-425.
Affirm tbe judgment.